```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

Ross Lay

    **v.**                            Case No. 05-cv-131-PB

United States, Ruth E. Franks,
and Charter Trust Company

**MEMORANDUM AND ORDER**

This action arises from plaintiff Ross Lay's purchase of real estate at a tax foreclosure auction.  He alleges that the defendants negligently misrepresented the balance owed on two mortgages that encumbered the property at the time of the sale. Ruth E. Franks and Charter Trust ("defendants") have moved for summary judgment, arguing that they did not owe Lay a duty of care with respect to the alleged misrepresentation.[1]  I grant their motion for the reasons set forth below.

**I.   BACKGROUND**[2]

Lay purchased the subject property at a foreclosure auction

---

[1] Lay's claims against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), were dismissed for lack of subject matter jurisdiction.  See Order dated October 3, 2005 (Doc. No. 22).

[2] I construe the facts in the light most favorable to Lay, the non-moving party.

in September 2002.  Compl. ¶ 17.  Prior to the foreclosure sale, the property was owned by Red Hill Health Center, P.A. ("Red Hill"), whose sole stockholder is Peter Hope.  Id. ¶ 7.  Red Hill acquired the property in 1989 and subsequently granted two mortgages on it to Peter's father, Theodore Hope.  Id. ¶¶ 7-8.  In 1994, Theodore assigned both mortgages to New London Trust Company (later acquired by Charter Trust Company) as trustee of the Theodore S. Hope Revocable Trust.  Id. ¶ 9.  After Theodore died, the trustee assigned the balance due on the mortgages to Peter pursuant to the terms of the trust.[3]  Id. ¶ 10.

In 2002, the Internal Revenue Service (IRS) foreclosed on several tax liens on the property and notified potential bidders that the property was being conveyed subject to outstanding local property taxes and the two mortgages originally granted to Theodore Hope.  Id. ¶¶ 12-13.  The notice stated that there was no balance due on the two mortgages.  Id.

After receiving the notice, Lay contacted the IRS agent who was in charge of conducting the sale to inquire about the property.  Id. ¶ 14.  The agent told Lay that the IRS had

---

[3] Although the Complaint states that Theodore Hope died in 1995, other evidence in the record indicates that he died in 1998 and the assignment occurred in 1999.  See Def. Mot. Summ. J. Ex. B (Franks Aff. ¶ 6; Letter from Franks to Peter Hope dated June 16, 1999).

obtained information from the trust company indicating that there was no balance owed on the mortgages as a consequence of Theodore Hope's death.  Id.  After Lay purchased the property at the tax auction, Peter Hope assigned the two mortgages to Robert and Laurie McDaniels.  Id. ¶ 18.  The McDaniels then leased the property to Henley Holding Group, LLC ("Henley").  Id.  In October 2003, Lay instituted proceedings in state court to obtain possession of the property.  Id. ¶ 19.  The McDaniels subsequently foreclosed on the mortgages, took title to the property as the high bidders and conveyed the property to Henley. Id. ¶ 20.

In the current action, Lay alleges that the defendants were negligent in representing to the IRS agent that the mortgages had zero balances.[4]  Id. ¶¶ 30, 36.  The defendants move for summary judgment, arguing that they did not owe Lay a duty of care with respect to the alleged misrepresentation.

---

[4] Lay asserts a separate negligence claim against the defendants based on a breach of their alleged "duty to assess properly and verify that there were no outstanding liens, mortgages or encumbrances, including but not limited to, the two mortgages held by Peter Hope . . . ."  Compl. ¶ 29.  This claim is merely a restatement of Lay's negligent misrepresentation claim because it too is based on Lay's claim that his damages were caused by his reliance on defendants' misrepresentations.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one "that might affect the outcome of the suit." Id. at 248.

In ruling on a motion for summary judgment, I construe the evidence in the light most favorable to the nonmovant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such

evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment. Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

### III. ANALYSIS

"Under New Hampshire law, whether a defendant's conduct creates a sufficiently foreseeable risk of harm to others sufficient to charge the defendant with a duty to avoid such conduct is a question of law." Iannelli v. Burger King Corp., 145 N.H. 190, 193 (2000) (quotation omitted). A duty may arise from a special relationship between the parties or from "the need for protection against reasonably foreseeable harm." Hungerford v. Jones, 143 N.H. 208, 211 (1998) (quotation omitted).

> [W]ith respect to negligence actions, it is necessary to adopt well-defined guidelines in order to prevent the imposition of remote and unexpected liability on defendants. The policy considerations of avoiding both infinite liability and uncertainty in the law must be balanced against the need to compensate those plaintiffs whose injuries derive, however remotely, from the defendant's negligence.

Williams v. O'Brien, 140 N.H. 595, 599 (1995) (citation and

quotation omitted).

The New Hampshire Supreme Court has adopted the position of the <u>Restatement (Second) of Torts</u> in regard to a professional's liability for negligently supplying information to a third party. <u>Demetracopoulos v. Wilson</u>, 138 N.H. 371, 375 (1994); <u>Spherex, Inc. v. Alexander Grant & Co.</u>, 122 N.H. 898, 904 (1982). A professional may be liable for negligent misrepresentation if, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest," he "supplies false information for the guidance of others in their business transactions." <u>Restatement (Second) of Torts</u> § 552(1) (1976).

Liability in this context is restricted to "a limited group of persons for whose benefit and guidance [the professional] <u>intends</u> to supply the information or <u>knows</u> that the recipient intends to supply it." <u>Id.</u> § 552(2)(a) (emphasis added). Liability is limited in this way because "the risk of liability to which the [maker of the representation] subjects himself by undertaking to give the information . . . is vitally affected by the number and character of the persons [receiving it], and particularly the nature and extent of the proposed transaction." <u>Id.</u> § 552 cmt. h. "It is not enough that the maker merely knows

of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Id.

The following example illustrates the scope of a professional's liability to unknown third parties:

> In 1934, A Company, a firm of surveyors, contracts with B to make a survey and description of B's land.  A Company is not informed of any intended use of the survey report but knows that survey reports are customarily used in a wide variety of real estate transactions and that it may be relied upon by purchasers, mortgagees, investors and others.  The survey is negligently made and misstates the boundaries and extent of the land.  In 1958 C, relying upon the report that B exhibits to him, purchases the land from B, and in consequence suffers pecuniary loss.  A Company is not liable to C.

Id. § 552 cmt. h, illus. 12.

Similarly, in this case, the evidence in the record suggests that Franks was not informed that the information concerning the mortgage balances might be used by potential bidders at a possible foreclosure sale.[5]  Franks' sworn testimony is that the

---

[5] Lay argues that summary judgment in this case is premature because discovery has not been completed.  Obj. to Mot. Summ. J. Ex. 1 (Decl. of George T. Campbell).  Although discovery may not be complete in this case, extensive discovery has taken place in the state court case and Lay has relied on depositions taken in that case to oppose summary judgment.  Lay did not request an extension of time to respond to the defendants' summary judgment motion and has failed to meet the benchmarks required to obtain relief under Rule 56(f).  See Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994).

agent did not tell her why he was inquiring about the mortgages and she "assumed he needed that information for tax purposes." Franks Aff. ¶ 10.  Franks also testified in the state court case that she did not discuss foreclosure of the tax liens or sale of the property with anyone from the IRS.  Franks Dep. at 31-32. Without this information, Franks could not have anticipated the extent to which the information would be disseminated and the purposes for which it would be relied upon.  I thus conclude that, under the circumstances presented here, Lay is not within the class of persons to whom the defendants may have owed a duty of care concerning their assessment of any balances due on the Red Hill mortgages.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment (Doc. No. 15) is granted.  The clerk is instructed to enter judgment accordingly.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 5, 2006

cc:  George T. Campbell, III, Esq.
     David P. Slawsky, Esq.